R. Alexander Saveri (SBN 173102)
Cadio Zirpoli (SBN 179108)
Sarah Van Culin (SBN 293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com; cadio@saveri.com; sarah@saveri.com

Randall Robinson Renick
HADSELL STORMER RICHARDSON & RENICK, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Email: rrr@hadsellstormer.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JOHN P. WEBB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE, INC., a California Corporation,<br><br>Defendant. | CASE NO.: 5:18-cv-2167<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff, John P. Webb, individually and on behalf of all those similarly situated, brings this action for damages and equitable relief against Apple, Inc. ("Apple") and alleges, based upon the investigation of counsel and on information and belief, as follows:

## I. OVERVIEW

1. Apple markets the iPhone line of phones as premium phones that are designed to offer fast performance and ease of use for consumers. Apple has been successful in this endeavor, with over a billion units sold worldwide and consumers paying hundreds of dollars for each iPhone.

2. Rather than address a known issue with several iPhone models head-on, Apple released an iOS update that purported to "improve power management." Unknown to consumers, this iOS update slowed the performance of their iPhones, negatively impacting the performance of the iPhones in question and causing some consumers to believe that their iPhones were now obsolete and needed to be replaced. Consumers did not know of or consent to this slowing of their iPhones.

3. By bringing this nationwide proposed class action, Plaintiff seeks the following relief on his own behalf and that of the class:

   a. Compensation for the harm done to Plaintiff and the class' iPhones;

   b. Compensation for expenses incurred as a result of Apple's actions in slowing the iPhone models in question, including the cost of unnecessary replacement iPhones purchased by class members;

   c. Restitution to Plaintiff and class members for all revenues, earnings, profits, compensation and benefits which may have been obtained by Apple as a result of their fraudulent and/or unfair business acts and practices; and

   d. Injunctive relief preventing Apple from using similar slowing techniques in the future without consumer consent.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. R 1332(d)(2). The matter in controversy exceeds $5 million, exclusive of interest and costs. At least one proposed class member is a citizen of a different state than Apple. There are more than 100 expected putative class members.

5. This Court has personal jurisdiction over Apple because Apple is incorporated under California law, headquartered in Cupertino, California, and because Apple engages in substantial, continuous, systematic, and non-isolated business activity in California.

6. Venue is proper in this District because a substantial part of the events or omissions which give rise to Plaintiff's claims are believed to have occurred in Santa Clara County. Apple is headquartered in Cupertino, California and Apple has marketed and sold the iPhones in question in this judicial district.

## III. INTRA-DISTRICT ASSIGNMENT

7. Assignment to the San Jose Division of this District is proper under Civil Local Rule 3-2(c) and (e) because a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in Santa Clara County, where Apple is headquartered.

## IV. PARTIES

8. Plaintiff, John P. Webb, is a resident of San Francisco, California, and purchased an iPhone 7. John P. Webb updated his iPhone's software and experienced a significant decline in its processing speed. As a result of the significant decline experienced, John P. Webb purchased a new iPhone X to replace his previous iPhone. John P. Webb has been injured by Apple's conduct as alleged in this Complaint.

9. Defendant, Apple, Inc. is a California corporation, headquartered in Cupertino, California. Apple designs, manufactures, and sells a range of personal technology devices, including the iPhone line of phones. Apple also develops the software platforms for its devices, including the iOS software used on iPhones.

**CLASS ACTION COMPLAINT - 2**

Case 5:18-cv-02167-NC   Document 1   Filed 04/11/18   Page 4 of 13

V. **FACTUAL ALLEGATIONS**

10. Apple announced the first iPhone in 2007 and since that time, Apple has sold over one billion units worldwide.[1]

11. All iPhones use Apple's proprietary iOS software. iOS is the operating system for iPhone and iPad devices and comes preinstalled on those devices. iOS is a closed system, meaning that iPhone users must use Apple's App Store to install software on their phone.

12. Apple regularly updates iOS, usually to add new features or address security flaws. iPhone users typically receive a pop-up message on their device to notify them when an iOS update is available to download. Users have become accustomed to downloading iOS updates to maintain and improve the functionality of their iPhone. Indeed, Apple reminds consumers that "[k]eeping your software up to date is one of the most important things you can do to maintain your Apple product's security."[2]

13. In 2016, consumers noticed that Apple's iPhone 6, 6s, and 6 Plus devices were unexpectedly shutting down, forcing users to plug their phones into an outlet to restart them.[3] In November 2016, Apple launched its iPhone 6s Program for Unexpected Shutdown Issues, allowing owners of iPhone 6s devices manufactured between September and October 2015, within a limited serial number range, to have their battery replaced free of charge.[4]

14. Later, Apple issued iOS 10.2.1, which it described as "improv[ing] power management during peak workloads to avoid unexpected shutdowns on iPhone."[5] The iOS 10.2.1 update notice described the update as including bug fixes and improving security.[6] Apple did not notify consumers that the update would slow their devices.

15. Apple issued a statement to Tech Crunch on February 23, 2017 describing the

---

[1] https://www.apple.com/newsroom/2017/01/iphone-at-ten-the-revolution-continues/
[2] https://support.apple.com/en-us/HT201222
[3] https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/
[4] https://www.apple.com/support/iphone6s-unexpectedshutdown/
[5] https://support.apple.com/kb/DL1893?viewlocale=en_US&locale=en_US
[6] https://www.forbes.com/sites/amitchowdhry/2017/01/23/apple-ios-10-2-1-is-now-available-what-is-included-in-the-update/#4118589a488f

CLASS ACTION COMPLAINT - 3

success of the "improvements" made with iOS 10.2.1 "to reduce occurrences of unexpected shutdowns that a small number of users were experiencing with their iPhone."[7] Apple noted that "iOS 10.2.1 already has over 50% of active iOS devices upgraded" and that "we're seeing a more than 80% reduction in iPhone 6s and over 70% reduction on iPhone 6 of devices unexpectedly shutting down."[8] Apple did not mention that it was limiting the performance of those iPhones via the updated iOS.

16. Generally, when older iPhone models exhibit slow performance, consumers believe that their iPhone has reached the end of its useful life and they buy a new phone.[9] iPhone users are notoriously loyal so when their current iPhone becomes obsolete, they frequently purchase a new iPhone, rather than any other brand of cellphone.[10]

17. After iOS 10.2.1 was released, Apple announced several new iPhone models—the iPhone 8 and iPhone 8 Plus, with prices starting at $699, went on sale in September 2017[11] while the iPhone X, with prices starting at $999, went on sale in November 2017.[12]

18. On December 18, 2017, John Poole of Primate Labs published his investigation into the performance of iPhones running different versions of iOS. His conclusion was that "[t]he difference between [iOS] 10.2.0 and 10.2.1 is too abrupt to be just a function of battery condition. I believe (as do others) that Apple introduced a change to limit performance when battery condition decreases past a certain point."[13] Mr. Poole noted that the likely consequence for consumers was that they would think "'my phone is slow so I should replace it' not 'my

---

[7] https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/
[8] *Id.*
[9] http://www.businessinsider.com/how-to-check-if-apple-slowing-down-your-iphone-2018-1
[10] http://www.businessinsider.com/apple-iphone-more-loyal-android-chart-2017-5 (2017 survey by Morgan Stanley found that 92% of iPhone owners who planned to get a new phone in the next 12 months were "somewhat or extremely likely" to get a new iPhone)
[11] https://www.apple.com/newsroom/2017/09/iphone-8-and-iphone-8-plus-a-new-generation-of-iphone/
[12] https://www.apple.com/newsroom/2017/10/iphone-x-available-for-pre-order-on-friday-october-27/
[13] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/

CLASS ACTION COMPLAINT - 4

phone is slow so I should replace its battery.'"[14]

19.     Ten days later, Apple issued "A Message to Our Customers about iPhone Batteries and Performance."[15] Apple apologized to consumers for how it handled the performance of iPhones with older batteries and "how we have communicated that process."[16] Apple acknowledged that with iOS 10.2.1, "iOS dynamically manages the maximum performance of some system components when needed to prevent a shutdown. While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance."[17] Apple also noted that it had "recently extended the same support for iPhone 7 and iPhone 7 Plus in iOS 11.2."[18] Apple also reduced the price of an out-of-warranty iPhone battery replacement from $79 to $29 for anyone with an iPhone 6 or later whose iPhone battery needed to be replaced through December 2018.[19]

20.     Since news of the performance throttling came to light, Apple received a letter from Senator John Thune, chair of the Commerce, Science and Transportation Committee seeking further information.[20] Apple has also revealed that it has received questions from some government agencies regarding the alleged throttling,[21] with reports suggesting that both the Department of Justice and the Securities and Exchange Commission have launched investigations.[22]

## VI.     CLASS ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on his own behalf and as representative of the following class of persons

---

[14] https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/
[15] https://www.apple.com/iphone-battery-and-performance/
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] https://www.reuters.com/article/us-apple-batteries/senator-wants-apple-to-answer-questions-on-slowing-iphones-idUSKBN1EZ1HE
[21] https://mashable.com/2018/01/31/apple-responds-us-government-iphone-throttling-probe/#ODHTV2.keaqs
[22] https://www.bloomberg.com/news/articles/2018-01-30/u-s-said-to-probe-apple-over-updates-that-slow-older-iphones-jd1yahj7

**CLASS ACTION COMPLAINT - 5**

and entities (the "Class"):

> All persons and entities in the United States who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and installed iOS 10.2.1 or 11.2 on their iPhone. Excluded from the class are Apple, its subsidiaries and affiliates, employees of Apple, including its officers and directors; and any judge or jurors assigned to this case.

22. The proposed class more than meets the prerequisites of Rule 23(a).

23. <u>Numerosity</u>: The proposed class is so large that joinder of all members is impracticable. Class members are also dispersed geographically, both throughout California and the U.S. While Plaintiff does not know the exact number of members of the Class, Apple sold tens of millions of the affected iPhone models in the United States. Plaintiff also understands that Apple has records of iPhone users from which class members can be identified.

24. <u>Common questions of law and fact</u>: Common questions of law and fact exist as to all members of the proposed class. Such common questions of law and fact include but are not limited to:

    a. Whether Apple engaged in the conduct alleged in this Complaint;

    b. Whether Apple misrepresented or failed to disclose that installing iOS 10.2.1 and 11.2 would negatively impact the performance of the affected iPhone models;

    c. Whether iOS 10.2.1 and 11.2 negatively impacted the performance of the affected iPhone models;

    d. Whether Apple informed its customers that the decline in the affected iPhone models' performance attributable to iOS 10.2.1 and 11.2 could be remedied by replacing the battery;

    e. Whether versions of the operating system issued after iOS 10.2.1 and 11.2 also negatively impacted the performance of the affected iPhone models;

    f. The appropriate injunctive and related equitable relief for the Class; and

    g. The appropriate class-wide measure of damages.

25. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class are iPhone owners who were damaged by Apple's

**CLASS ACTION COMPLAINT - 6**

wrongful practices. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class.

26. <u>Fair and Adequate Representation</u>: Plaintiff's interests are coincident with, and not antagonistic to, those of the other Class members. Plaintiff is represented by counsel, who are competent and experienced in the prosecution of complex class action litigation.

27. The proposed class also meets the requirements of Rule 23(b)(2) and Rule 23(b)(3).

28. <u>Rule 23(b)(2)</u>: Apple's alleged conduct caused harm to all class members by negatively impacting the performance of their iPhones through the iOS updates. Apple's actions apply generally to the class and any final injunctive relief would be appropriate with respect to the class as a whole.

29. <u>Rule 23(b)(3)</u>: The questions of law and fact common to the members of the Class are predominant and outweigh those questions affecting only individual members, including legal and factual issues relating to liability and damages.

30. Class action treatment is a superior method for the fair and efficient adjudication of this litigation. With potentially millions of putative class members, class treatment will allow this enormous number of similarly situated potential plaintiffs to prosecute their common claims in a single forum in the most efficient manner. This will avoid the inevitable duplication of evidence, effort, and expense that numerous individual actions would involve. The benefits of proceeding through the class action mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually and significantly reducing the burden on the court system of trying these cases individually, far outweigh any difficulties that may arise in the management of this class action.

## VII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION: FRAUD

31. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceeding paragraphs of this Complaint.

32. Apple released iOS updates that were designed to slow the performance of older iPhone models. Apple failed to inform consumers that their iPhones would be slowed as a result of downloading these iOS updates and instead marketed the updates as improvements. Apple knew that the effect of downloading these iOS updates would be to slow the performance of the iPhones in question but withheld that information from consumers.

33. Consumers justifiably relied on Apple's representations that the iOS update was an improvement when they downloaded the iOS updates. iOS updates are the established method for resolving known issues with the performance of iPhones and consumers are accustomed to downloading these updates to improve the performance of their iPhones. Consumers had no way of knowing that Apple's description of the iOS update was incomplete.

34. As a result of Apple's misrepresentation, consumers have been harmed. By withholding important information about the iOS update, Apple prevented consumers from making the decision between downloading an iOS update that would negatively impact their iPhone and replacing their iPhone battery. As a result of downloading the iOS update, consumers' iPhones slowed and the performance of their iPhones was negatively impacted. Furthermore, some consumers purchased new iPhones to replace the slowed iPhones, believing their iPhones to be obsolete.

**SECOND CAUSE OF ACTION: TRESPASS TO CHATTELS**

35. Plaintiff incorporates and realleges, as through fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

36. Plaintiff and the putative class members owned the following iPhone models: iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus. At Apple's suggestion, they installed either iOS 10.2.1 or 11.2 on their iPhones.

37. Apple intentionally released iOS updates that were designed to slow the performance of older iPhone models, interfering with Plaintiff and the putative class members' ability to use their iPhones.

38. Apple did not announce that the iOS updates would slow the performance of the

iPhone models but rather described the updates as "improving power management to avoid unexpected shutdowns." Since Plaintiff and the putative class members did not know that this would be achieved by slowing the performance of their iPhones, they did not consent to it.

39. Apple's actions were the direct cause of injury to Plaintiff and the putative class members because the updates slowed, and thereby harmed, the functioning of their iPhones. Apple's actions affected the quality and value of the iPhones to Plaintiff and the putative class members by negatively impacting their performance.

40. As a result of Apple's actions, Plaintiff and the putative class members are entitled to recover damages in amounts according to proof.

**THIRD CAUSE OF ACTION: FRAUDULENT CONDUCT IN VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.)**

41. Plaintiff incorporates and realleges, as through fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

42. The business acts and practices of Apple, as alleged herein, violate the "fraudulent" prong of section 17200 *et seq.* of the California Business and Professions Code.

43. Apple withheld key information about the iOS updates they released. Consumers reasonably relied on Apple's representation that the updates would resolve known issues with their iPhones when they downloaded the updates. Apple knew, but did not inform consumers, that the iOS update would slow the iPhones in question, negatively impacting their performance.

44. As a result of Apple's conduct, Plaintiff and the putative class members were harmed in that their iPhones slowed and performance was negatively impacted by the iOS update. Furthermore, consumers purchased new iPhones to replace the slowed iPhones, without knowing that a simple battery replacement could repair their iPhone.

45. Apple's acts, omissions, misrepresentations, practices, and non-disclosures, as alleged herein above, constitute fraudulent business practices within the meaning of Business and Professions Code, Section 17200 *et seq.* Plaintiff and the putative class members are accordingly entitled to equitable relief directing full restitution of all revenues, earnings, profits,

compensation and benefits which may have been obtained by Apple as a result of these business acts and practices. Plaintiffs and the putative class members also seek an injunction prohibiting Apple from committing such fraudulent business practices in the future.

## FOURTH CAUSE OF ACTION: UNFAIR CONDUCT IN VIOLATION OF UNFAIR COMPETITION LAW

46. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

47. The business acts and practices of Apple alleged herein violate the "unfair" prong of section 17200 *et seq.* of the California Business and Professions Code. Apple's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and is not outweighed by any countervailing benefits to consumers.

48. Apple withheld key information about the iOS updates they released. Consumers reasonably relied on Apple's representation that the updates would resolve known issues with their iPhones in downloading the updates. Apple knew, but did not inform consumers, that the iOS update would slow the iPhones in question, negatively impacting their performance. Apple also did not inform consumers that simply replacing their iPhone's battery could resolve the issues with performance.

49. As a direct and proximate result of Apple's conduct, Plaintiff and the putative class members were harmed in that their iPhones slowed and performance was negatively impacted by the iOS update. Furthermore, consumers purchased new iPhones to replace the slowed iPhones, without knowing that a simple battery replacement could repair their iPhone.

50. Apple's acts, omissions, misrepresentations, practices, and non-disclosures, as alleged herein, constitute unfair business practices within the meaning of Business and Professions Code, Section 17200 *et seq*. Plaintiff and the putative class members are accordingly entitled to equitable relief directing full restitution of all revenues, earnings, profits, compensation and benefits which may have been obtained by Apple as a result of these business acts and practices. Plaintiffs and the putative class members also seek an injunction preventing

Apple from conducting such unfair business practices in the future.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT

51. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

52. Plaintiff and the putative class members paid substantial amounts of money to purchase the iPhones at issue in this litigation. Consumers also paid substantial amounts of money to replace their iPhones, as a result of the negative performance impact from the iOS updates released by Apple and often at the urging of Apple representatives.

53. Apple knowingly released an iOS update that slowed the performance of older iPhones. Apple did not inform consumers about the nature of the iOS update and failed to disclose that a simple battery replacement could resolve the issues with the affected iPhones. As a result of the slowed performance of their iPhones, consumers purchased new iPhones to replace iPhones that they understood to be obsolete.

54. Apple has retained the monetary benefits it received from class members as a result of the actions described in this complaint.

55. It is inequitable for Apple to retain these benefits in light of Apple's actions. Plaintiff and the proposed class were not aware of the true reasons behind the slowed performance of their iPhones and have been harmed by Apple's actions.

56. Plaintiff and the putative class members are entitled to disgorgement of the sums Apple received as a result of its wrongful conduct, in amounts according to proof.

V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B. Direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

C. Appoint Plaintiff as Class Representative and his counsel of record as Class

Counsel;

D. Enter judgment against Apple and in favor of Plaintiff and the Class;

E. Award Plaintiff and the Class damages to the maximum extent allowed, including actual and statutory damages;

F. Award Plaintiff and the Class equitable, injunctive and declaratory relief as appropriate under applicable laws;

G. Award pre- and post-judgment interest at the highest legal rate;

H. Award Plaintiff and the Class members' reasonable attorneys' fees and costs of suit; and

I. Award such other and further relief as the Court may deem just and proper.

VI. **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: April 11, 2018                    */s/ R. Alexander Saveri*

R. Alexander Saveri (SBN 173102)
Cadio Zirpoli (SBN 179108)
Sarah Van Culin (SBN 293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com;
cadio@saveri.com; sarah@saveri.com

Randall Robinson Renick
HADSELL STORMER
RICHARDSON & RENICK, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Email: rrr@hadsellstormer.com

**CLASS ACTION COMPLAINT - 12**